**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| JAIRO ARTURO OSORIO-ENRIQUEZ, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> JERRY FORTENBERRY, *et al.*, <br><br> Defendants. | Case No. 2:14–cv–322–APG–VCF <br><br> **ORDER** |

This matter involves Jairo Arturo Osorio-Enriquez and Lois Osorio's vehicular negligence actions against Jerry Fortenberry, *et al*. (Compl. (#1) at 7–12[1]). Before the court is Fortenberry's motion to transfer venue (#20). The Osorios filed an opposition (#21); and Fortenberry replied (#22). For the reasons stated below, the Fortenberry's motion is granted.

**BACKGROUND**

Jario Osorio-Enriquez is a high school graduate and truck driver. (Osorio Aff. (#21-1) at ¶¶ 1, 3, 4). In 2008, he completed a driving program administered by C.R. England, Inc., "the world's largest refrigerated trucking company." (*Id*. at ¶ 2). Osorio was hired as independent contractor, paid on a 1099 basis, and eventually became a "Lease Trainer" for C.R. England. (*Id*. at ¶¶ 1, 3).

Sometime in 2009, C.R. England presented all of its independent contractors, including Osorio, with an ultimatum: sign this document or get a new job. (*Id*. at ¶ 6). The document is a seventy-six page contract entitled "Independent Contractor Operating Agreement." (*See generally* Def.'s Mot. to Transfer

---

[1] Parenthetical citations refer to the court's docket.

(#20) at Exhibit A). It has twenty-three sections, approximately twelve attachments, at least two supplements, and at least two addendums.[2] (*Id.*) Some of the attachments are designated by numbers and some of attachments are designated by letters. (*Id.*)

Section 18 of the contract is entitled "Dispute Resolution" and includes a forum section clause. (Exhibit A (#20-1) at ¶ 18). The forum selection clause reads:

> THE PARTIES AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING SALT LAKE CITY, UTAH, WITHIN TWO YEARS OF THE ACCRUAL OF SUCH CLAIM OR DISPUTE. YOU AND WE HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

(*Id.*) Osorio signed the contract on April 8, 2011. (*Id.* at ¶ 23).

On February 4, 2012, Osorio was riding in the passenger seat of one of C.R. England's cabs. (Pl.'s Opp'n (#21) at 2:22). He was training Jerry Fortenberry, who was driving. (*Id.* at 2:23). As the truck headed eastbound on interstate 80 through Pershing County, Fortenberry allegedly let the truck drift towards the median. (*Id.* at 2:24–28). Fortenberry lost control. (*Id.*) He had attempted to steer back into the middle of his lane, but he over corrected and the tractor trailer spun clockwise, struck a metal paddle marker, rolled onto its side, and slid down the interstate before grinding to a halt. (*Id.* at 2:26–3:2).

Osorio was injured, "rendered sick and lame," and suffered "severe shock to the nervous system and great pain." (*See* Compl. (#1) at ¶ 13). The injuries prevented Osorio from being able to work for two years. (Osorio Aff. (#21-1) at ¶ 7). Consequently, Osorio and his wife, Lois Osorio, filed suit on January 14, 2014 in the Eighth Judicial District Court of the State of Nevada against Fortenberry, C.R.

---

[2] It is unclear how many attachments, supplements, and addendums are in the contract because attachment four is followed by attachment seven. (*See generally* Def.'s Mot. to Transfer (#20) at Exhibit A). Counsel did not indicate whether Exhibit A includes the entire contract or just portions of it.

England, and C.R. England's various parents, subsidiaries, and partners. (Compl. (#1) at ¶ 1). Defendants timely removed and now move the court to transfer venue to the District of Utah pursuant to section 18 of Osorio's operating agreement with C.R. England.

## LEGAL STANDARD

28 U.S.C. § 1404(a) governs the transfer of venue. It states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of the statute is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Operation Heroes v. Procter and Gamble Prod. Inc*., 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012) (citation omitted).

In the typical case not involving a forum-selection clause, a district court considering a *forum non conveniens* motion must evaluate various private-interest factors and public-interest factors, and determine whether a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (citing 28 U.S.C. § 1404(a)).[3]

This calculus changes when the litigants are also parties to a contract that contains a valid forum-selection clause. *Atlantic Marine*, 134 S. Ct. at 581. A valid forum selection clause "represents the parties' agreement as to the most proper forum." *Id*. (citing *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S.

---

[3] As stated in *Atlantic Marine*, the factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atlantic Marine*, 134 S. Ct. at 581, n. 6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981). By contrast, the public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. The court must also give some weight to the plaintiffs' choice of forum. *Atlantic Marine*, 134 S. Ct. at 581, n. 6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

22, 31 (1988). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. (citation omitted). For that reason, and because the overarching consideration under section 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (citation omitted).

Accordingly, the presence of a valid forum-selection clause requires district courts to adjust their usual section 1404(a) analysis in three ways: (1) the plaintiff's choice of forum merits no weight; (2) a court evaluating a defendant's section 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests; and (3) when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a section 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. *Id*. at 581–82.

"[F]orum selection clauses are presumptively valid, [and] they should be honored absent some compelling and countervailing reason." *Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *Bremen v. Zapata Off–Shore Co*., 407 U.S. 1, 15 (1972)). Courts may find enforcing a forum selection clause unreasonable if one of the following grounds are present: (1) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Id*. (quotation omitted). The party seeking to avoid a forum selection clause bears a heavy burden of proof and must clearly show a ground upon which the clause is unenforceable. *Id*.; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). The decision to enforce a forum selection clause is governed by federal law and lies within the district court's discretion. *Petersen*, 715 F.3d at 279–80.

4

## DISCUSSION

The parties' filings raise three questions: (1) whether the forum-selection clause is enforceable; (2) whether the Osorios' negligent action falls within the operating agreement's scope; and, if so, (3) whether the court should transfer this action to the District of Utah. Each question is addressed below.

### I. Whether the Forum-Selection Clause is Enforceable

As previously stated, forum-selection clauses are presumptively valid and only invalidated if the clause is the product of fraud or overreaching, would effectively deprive a litigant of his day in court, or would contravene a strong public policy. *Murphy*, 362 F.3d at 1140 (citing *Bremen*, 407 U.S. at 15). Here, the Osorios argue that C.R. England's forum-selection clause is unenforceable for two reasons: (1) litigating in the District of Utah "would be extremely difficult for Osorio and his wife financially" and (2) the forum-selection clause is unconscionable. The court disagrees.

First, increased litigation costs are generally insufficient to invalidate a forum-selection clause. *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005) ("The cost of [litigating in a different forum] alone cannot be enough to meet the heavy burden imposed upon the reneging party." (quotation marks omitted)); *see also Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997) (finding the "serious inconvenience" of an American party having to litigate in Korea based on a forum selection clause did not meet the heavy burden of proof required to render the enforcement of a forum selection clause unreasonable).

Here, the Osorios argue that such costs warrant invalidation because Mr. Osorio has been unemployed for two years. (Pl.'s Opp'n (#21) at 5:26). Standing alone, this fact fails to overcome the Osorios' "heavy burden." *Murphy*, 362 F.3d at 1140. The Osorios also argue that the clause should be invalidated because Mr. Osorio recently received a new job and will face difficulties when requesting

time off of work. (Pl.'s Opp'n (#21) at 5:27). However, this argument lacks merit because all litigants, no matter where they litigate, take time off work to appear in court. Additionally, the fact that Mr. Osorio is now employed diminishes the financial burden of litigating in the District of Utah.

Having determined that the Osorio's financial difficulties are insufficient to invalidate the forum selection clause, the court turns to the Osorio's second argument: that the forum-selection clause is unconscionable. (*Id.* at 6:10). As stated by Professor Williston, unconscionability was meant to counteract two abuses:

> [T]he first of which relates to procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms . . . and the second of which relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party.

8 WILLISTON ON CONTRACTS 18:10 (4th ed.); *see also Comm. Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 2012 UT 49, 285 P.3d 1193, 1203 (stating the same); *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (Nev. 2004) (stating the same).

The Osorios cite two facts in support of a finding of unconscionability: (1) Mr. Osorio only has a high school education and (2) C.R. England had more bargaining power. (Pl.'s Opp'n (#21) at 6:6, 9). These facts do not support a finding of unconscionability. Contracts may be formed by individuals with high-school level educations and parties of unequal bargaining power. The circumstances of the contract's formation was admittedly difficult. Mr. Osorio was given a choice to either sign the document or find a new job. However, adhesion contracts are not unconscionable as a matter of law and the Osorios have failed to point to any procedural deficiencies in the contract formation process that would support a finding of unconscionability.

Accordingly, the court concludes that the Osorios failed to satisfy their "heavy burden" of demonstrating that C.R. England's forum-selection clause is unenforceable.

**II.      Whether the Osorios' Negligence Claim falls within the Operating Agreement's Scope**

The parties' filings raise a second question: whether the Osorios' negligent action falls within the operating agreement's scope. The Osorios argue that their tort-based action is beyond the scope of C.R. England's operating agreement because the Osorios are "not contending that there was a breach of contract or seek a claim in relation to the terms of the agreement." (Pl.'s Opp'n (#21) at 7:13–15). This argument is unpersuasive.

Forum-selection clauses can be equally applicable to contract and tort causes of action. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *cert. denied*, 464 U.S. 938 (1983)). Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. *Manetti-Farrow*, 858 F.2d at 514 (citations omitted). In *Manetti-Farrow*, the Ninth Circuit determined that a tort claim related to the interpretation of a contract because the tort claims "relate[] in some way to rights and duties enumerated" in the contract. *Id*.

So too here. The operating agreement is Mr. Osorio's employment contract. The Osorios' negligence action is predicated on injuries Mr. Osorio sustained while employed under the terms of the contract. Therefore, the Osorios' negligence action is subject to the contract and the rights and duties enumerated in it. The Osorios attempt to avoid this conclusion, arguing that their claim "can be adjudicated without determining whether the parties were in compliance with the contract." (Pl.'s Opp'n (#21) at 8:20–21). This is wrong. Mr. Osorio was hurt on the job. The accident implicates rights and duties enumerated in the employment contract. As a result, compliance matters because it may determine whether either party acted negligently. *See Manetti-Farrow*, 858 F.2d at 514 ("Each of these claims relates in some way to rights and duties enumerated in the exclusive dealership contract. The claims cannot be adjudicated without analyzing whether the parties were in compliance with the

7

contract.").[4]

The Osorios make two additional arguments in opposition. Neither are persuasive. For instance, the Osorios assert that their negligence claim falls beyond the scope of the operating agreement because "Plaintiffs are not contesting the terms or materiality of the agreement itself." (*Id*. at 7:20). Under *Manetti-Farrow*, this is insufficient. *See Manetti-Farrow*, 858 F.2d at 514 (stating that whether a forum selection clause applies to tort claims depends on whether the claims relate to the contract).

The Osorios also argue that the forum-selection clause is inapplicable because "[i]t is unreasonable to expect that all possible claims, especially such tort claims as in this case, would be governed by the forum selection clause." (*Id*. at 7:22–23). The court disagrees. Whether tort claims are governed by a forum-selection clause depends on the parties' intent as reflected by the wording of the clause and the facts of the case. *Berrett v. Life Ins. Co. of the Sw*., 623 F. Supp. 946, 948-49 (D. Utah 1985) (citations omitted). Here, the wording is unequivocal. The clause states that "any claim or dispute" that "aris[es] from or in connection with" the contract must be heard in Utah or the District of Utah. (Exhibit A (#20-1) at ¶ 18). "Any claim," by definition, includes tort claims.

The facts of this case also militate in favor of concluding that Osorio's tort action is subject to the clause. C.R. England is a trucking company. Mr. Osorio was one of their drivers. It is reasonable that a trucking company's operating agreement with its workers would contemplate the possibility of on-the-job accidents. In *Berrett*, the court observed that "compelling factual considerations may dictate that claims otherwise governable by forum selection clauses be retained for disposition in the District where filed." *Berrett*, 623 F. Supp. at 949. The Osorios have not presented "compelling" facts.

---

[4] The Osorios admit as much by comparing the rights and duties under the contract with the doctrine of comparative negligence. (Pl.'s Opp'n (#21) at 8:20–23).

### III.     <u>**Whether the Court should Transfer Venue to the District of Utah**</u>

The parties' filings present a third question: whether the court should transfer this action to the District of Utah. The court concludes that the matter should be transferred to the District of Utah.

As previously stated, valid forum-selection clauses are given "controlling weight" in all but the most exceptional cases. *Atlantic Marine*, 134 S. Ct. at 581. The presence of a valid forum-selection clause requires district courts to disregard the plaintiff's choice of forum and the parties' private interests. *Id*. at 581–82.

Here, C.R. England's forum-selection clause unequivocally requires the Osorios' action to be heard in the District of Utah. It states:

> The parties agree that any claim or dispute arising from or in connection with this agreement . . . Shall be brought exclusively in the state or federal courts serving Salt Lake City, Utah, within two years of the accrual of such claim or dispute. You and we hereby consent to the jurisdiction and venue of such courts.

(Exhibit A (#20-1) at ¶ 18). The Osorios do not dispute that the clause requires transfer to the District of Utah. (*See generally* Pl.'s Opp'n #21). The Osorios only oppose transfer on the grounds that the clause is unenforceable and that their action falls beyond the scope of the contract that contains the clause. (*See id*.) For the reasons stated above, (*see supra* §§ I–II) the court disagrees.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Fortenberry's motion to transfer venue (#20) is GRANTED.

IT IS FURTHER ORDERED that this matter is TRANSFERRED to the DISTRICT OF UTAH for further proceedings.

IT IS SO ORDERED.

DATED this 13th day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE